169 So. 24

## GRIFFIS v. STATE.

### 8 Div. 311.

Court of Appeals of Alabama.

June 16, 1936.

J. G. Rankin, of Athens, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The offense complained of in this case was alleged to have been committed on Saturday night, October 13, 1933. The indictment against this appellant was found by the grand jury and duly returned into open court and filed on November 6, 1935; the offense charged being robbery.

Otis Cook, the alleged injured party, and upon whose testimony the state relied for a conviction, he being the only witness who testified for the state, stated, in substance, upon the night in question he was robbed of the money described in the indictment by two negro men each of whom were unknown to him, and his testimony as shown by the record was:

"My name is Otis Cook and I live in Athens; I have seen the defendant here, first saw him in my store the fourteenth night of October, 1933; there was another negro with him and the other one called for a penny box of matches and gave me a quarter and they followed me back to the cash register and while I was counting the change out in the other negro's hand this negro here stuck a gun in my face and told me to stick them up; they took $121.00 in currency and twenty-one dollars in silver out of my pocket,—while the defendant held the gun on me the other one took it; they left together. The next time I saw this negro was on the street just this side of the Ritz Theater; he was the man that put the gun in my face and held me up; that was in Limestone county, Alabama."

And on cross-examination he testified, among other things:

" * * * The negro fair was going on at that time and there were a good many strange negroes in town during the negro fair; I never had seen this negro before to recognize him. * * * When I first saw him again it was on Friday morning, but I don' remember just how long it has been —about two months ago; it was about twenty-three months after it happened; when he drew the gun on me and told me to stick 'em up he was standing right behind another negro who was standing between me and the defendant; defendant had the gun right over the other negro's shoulder right in my face. I have never seen the other negro since then and had never seen him before that that I know of; * * * I hadn't seen this negro before and hadn't seen him since until about three months ago. * * * I imagine it was ten or fifteen minutes that I had to look at him—it seemed like a long time to me; I was looking at him and the other negro that whole time; the first time I saw him he was walking on the sidewalk and I was driving down the street and I thought it was him and drove up the street and turned around and parked my car and let him pass me and I got a good look at him and then I knew it was him— I knew he was the same one that robbed me."

The defendant strenuously denied that he was one of the men who robbed Cook, and stated he had never been in his store and had never seen him before. He testified himself, and offered several unimpeached witnesses, all of whom testified positively that this appellant was working with them hauling cotton on the day and night in question; that he worked until 9:30 o'clock that night and had been constantly in the

presence of these several witnesses during the entire day the offense was committed. Cook testified he was robbed at 8 o'clock that night, at which time this appellant and his several witnesses testified he was hauling cotton some distance from the scene of the crime.

From the foregoing, the controlling question in this case was the identity of the defendant. The injured party stated he was the man. That he denied, and his several witnesses also swore, he was not the man who committed the offense.

This conflict made a jury question, and as shown by the record, after many hours of deliberation, the jury returned the verdict of guilty as charged in the indictment, and fixed the punishment at ten years imprisonment in the penitentiary.

The defendant offered several witnesses who testified that he was a man of good character. This evidence was without dispute.

The only question presented for our consideration on this appeal is the exception reserved by the defendant to the court's action in overruling his motion for a new trial. The three grounds of the motion are all to the same effect, the insistence being that the state had failed to meet the burden of proof necessary to a conviction and that, "the verdict of the jury was: (1) Not sustained by the great preponderance of the evidence and is contrary to law. (2) That the verdict of the jury was opposed and against the great weight and preponderance of the evidence had on the trial; and, (3) the verdict of the jury in this cause was contrary to the law and the evidence in that said verdict was against the great weight of the evidence had on the trial."

To sustain the exception thus insisted upon and put the court in error for having overruled the motion for a new trial would necessitate in effect substituting ourselves for the trial court and the jury, and this we are without authority to do. The trial judge saw and heard the witnesses and was in every way better able to decide this controlling question than this court could possibly be. If, as insisted by appellant, Cook, the injured party was mistaken in his identification of the accused, his mistake results in a terrible miscarriage of justice and an irreparable injury. Unquestionably, under the evidence in this case, the jury would have been justified in returning a verdict for defendant, and if the testimony of the large number of witnesses who testified so strong-

ly in his behalf created a reasonable doubt as to his guilt, after a consideration by them of all the evidence adduced upon the trial, it was their bounden and sworn duty to give to the accused the benefit of such reasonable doubt. The one witness for the state testified he was the man, and the jury adopted his evidence as the truth. They had this right notwithstanding the earnest insistence of appellant's able counsel wherein it is contended with much force as follows:

"The judgment of conviction rests entirely on the identification of defendant by the victim of the robbery. The evidence shows that on the night of October 13 or October 14, 1933 about eight o'clock the State's witness Cook was accosted in his store in the suburbs of Athens, Alabama by two negroes, one of whom drew a pistol on him and told him to 'stick them up;' that the negro who had the pistol was standing behind the other negro and Cook identifies the defendant as the one with the pistol; that while, as he says, the pistol was held on him the other negro took money out of his pockets and that they then left together; that the witness Cook had never seen either of the negroes before and never saw either of them afterwards until twenty-one or twenty-two months thereafter when he claims to have seen defendant on the streets in Athens and had him arrested; it was further shown by the undisputed evidence that the State's witness Cook had lived in Athens for seventeen or eighteen years prior to the robbery and continuously thereafter and that the defendant had lived in Athens for eight or ten years before the trial with the exception of four weeks when he went to Ardmore, Alabama, a town in the same county, and worked there for about four weeks. It was also shown on the trial that the defendant was a working negro and worked regularly before and after the robbery.

" * * * The injured party, Otis Cook in this case, must of necessity have been greatly excited; his mental state when thus suddenly attacked was of course naturally much perturbed and abnormal. He had never seen the defendant before and was suddenly set upon from behind and a pistol thrust into his face. He never saw him afterwards for twenty-two or twenty-three months although they each lived in Athens, Alabama, a small town the population of which the court judicially knows. The defendant continued to live in this small town and continued to work in the same line of business in which he was engaged at the time of the robbery,—that is,

working for people who ran warehouses and who transported cotton from warehouses to the freight depot and other places. The very fact that defendant was a working negro and continued to work and bore a good reputation in the community where he lived and with the people for whom he worked was sufficient to generate a reasonable doubt of his guilt to say nothing of the unsatisfactory evidence with reference to his identity."

The above insistences would no doubt prove to be strong argument if presented to the proper authorities who are vested with the pardoning powers of the state. This court has no such powers. Our jurisdiction is appellate only in cases of this character and review here, in such cases, is limited to those matters upon which ruling at nisi prius was invoked and had. In the absence of prejudicial error, the lower court cannot be put to error. Accordingly, we must perforce hold that the judgment of conviction from which this appeal was taken will stand affirmed as no reversible error is presented for the reasons above stated.

Affirmed.